UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KATHERINE KACZANOWSKI,

                Plaintiff,                    Case No. 1:23-cv-12888

v.                                               Honorable Thomas L. Ludington
                                                   United States District Judge
DRIVEN GROW, LLC,

                Defendant.
_____/

**AMENDED OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS OR IN THE ALTERNATIVE , STAY PROCEEDINGS AND COMPEL ARBITRATION**

In November 2023, Plaintiff Katherine Kaczanowski sued her former employer, Defendant Driven Grow, LLC, alleging discrimination and retaliation in violation of both federal and state law. Defendant now seeks to dismiss or, in the alternative, stay the case in light of an arbitration provision within Plaintiff's unsigned employment manual, which she acknowledged receiving just after she began her employment. But the manual explicitly provided that it was not a contract between the Parties and Plaintiff did not otherwise manifest her assent to the manual's arbitration provision. So, Defendant's motion to compel arbitration will be denied.

**I.**

Defendant Driven Grow LLC is a cannabis producer based in Crawford County, Michigan.[1] ECF No. 1 at PageID.2. In May 2019, Plaintiff Katherine Kaczanowski began working

---

[1] Defendant describes itself as "Michigan's [l]eading [c]annabis [p]roducer" which operates 12 "grow rooms" and a "16,000 square foot outdoor greenhouse," and produces over two tons of "dried flower" per year. *About*, DRIVEN GROW, https://www.drivengrow.com/about (last visited Aug. 9, 2024)

for Defendant as an Assistant Manager of Defendant's "trim room." *Id.* In 2021, Plaintiff was promoted to "Packaging Lead." *Id.*

At all times throughout her employment with Defendant, Plaintiff suffered from "disc disease"[2] and fibromyalgia,[3] which required that she take intermittent breaks throughout her shifts. *Id.* at PageID.3. Initially, Defendant accommodated Plaintiff and allowed her to take intermittent breaks. *Id.* However, "in or around January of 2023," Defendant "revoked the intermittent breaks it provided [to] its employees" like Plaintiff. *Id.*

In response, on February 1, 2023, Plaintiff formally requested intermittent breaks during her shifts to accommodate her disability, under the Family and Medical Leave Act (FMLA). *Id.* Defendant granted Plaintiff's request five days later. *Id.* However, "[a]fter [her] accommodation was approved," Plaintiff alleges she was "immediately" harassed by her coworkers. *Id.* Plaintiff provides two examples of this alleged harassment:

   (1) On February 7, 2023, one of Plaintiff's coworkers filed an unsupported internal complaint with Defendant that Plaintiff exhibited "daily rudeness" and that Defendant disciplined Plaintiff for this complaint without prior investigation; and

   (2) On May 1, 2023, one of Plaintiff's coworkers filed a "bogus" internal complaint with Defendant which accused Plaintiff of "having an 'unhelpful attitude' and throwing an object at" the coworker. Plaintiff alleges that Defendant issued a "second written reprimand" against her in response to this complaint, despite Defendant's knowledge of security camera footage which confirmed Plaintiff did not throw anything at the coworker.

---

[2] Disc disease—or degenerative disk disease—"occurs when the cushioning in [the] spine begins to wear away" and may cause pain, herniated disks, and scoliosis. *Degenerative Disk Disease*, CLEVELAND CLINIC https://my.clevelandclinic.org/health/diseases/16912-degenerative-disk-disease (last updated May 27, 2021) [https://perma.cc/FM7D-6PFP]. Notably, however, "[e]veryone's spinal disk degenerate over time" as "a normal part of aging." *Id.*

[3] "Fibromyalgia is a chronic . . . disorder that causes pain and tenderness throughout the body, as well as fatigue and trouble sleeping." *Fibromyalgia*, NAT'L INST. OF HEALTH, https://www.niams.nih.gov/health-topics/fibromyalgia (last updated May 2024) [https://perma.cc/323W-38WX]. "Scientists do not fully understand what causes" fibromyalgia and there is no known cure. *Id.*

*Id.* at PageID.3–4.

In response, Plaintiff wrote Defendant's management a letter on May 10, 2023 "explaining that she felt the reprimands had been motivated, at least in part, by [her] disability and [] requested accommodations." *Id.* at PageID.4. But, on May 15, 2023, Defendant terminated Plaintiff's employment. *Id.* Plaintiff alleges the termination was retaliatory, and that Defendant's termination letter expressly "admitted" that she was fired for complaining about harassment. *Id.*

Accordingly, on November 14, 2023, Plaintiff filed a Complaint alleging Defendant (1) retaliated against her in violation of the FMLA, 29 U.S.C. § 28 (Count I); discriminated against her in violation of Michigan's Persons with Disabilities Civil Rights Act, MICH. COMP. LAWS § 37.1202 (Count II); and retaliated against her in violation of the same (Count III). *Id.* at PageID.5–8. On January 4, 2024, Defendant filed a motion to dismiss or, alternatively, stay proceedings and compel arbitration, arguing that Plaintiff's Complaint is barred by the express terms of Defendant's Employment Policies Manual (the "Manual"), which require arbitration. ECF No. 3. Plaintiff responded on January 25, 2024, ECF No. 8, but Defendant did not file a reply.

**II.**

Under the Federal Arbitration Act (FAA), a written agreement to arbitrate disputes within a contract involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. When a party seeks to compel arbitration under the terms of a contract, a reviewing court "has four tasks:"

(1) The court must determine whether the parties agreed to arbitrate;
(2) The court must determine the scope of that agreement;
(3) If federal statutory claims are asserted, the court must consider whether Congress intended those claims to be nonarbitrable; and
(4) If the court concludes that some, but not all, of the claims are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration

*Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). When reviewing the enforceability of a purported arbitration agreement, courts apply relevant state contract law. *Morrison v. Cir. City Stores, Inc.*, 317 F.3d 646, 666 (6th Cir. 2003). If the parties executed a valid contract, courts should construe "the language of the contract in light of the strong federal policy *in favor* of arbitration." *Stout*, 228 F.3d at 714 (emphasis added) (noting the FAA "was designed to override judicial reluctance to enforce arbitration agreements, to relieve court congestion, and to provide parties with a speedier and less costly alternative to litigation). "[A]ny ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration." *Id.*

### III.

Defendant's Motion to Compel Arbitration fails at the first step: neither Defendant nor Plaintiff agreed, as a matter of contract, to arbitrate claims.

Defendant argues to the contrary and seeks to compel arbitration because, on June 4, 2019, Plaintiff signed an Employee Acknowledgement Form (the "Acknowledgement"), ECF No. 3 at PageID.56, which confirmed that she "received" and Defendant's May 28, 2019 Employment Policies Manual (the "Manual"), which contained the following provision:

> **DD. ARBITRATION**
> Although [Defendant] hopes that employment disputes with its employees will not occur, [Defendant] believe[s] that when these disputes do arise, it is in the mutual interest of all concerned to handle them promptly and with a minimum of disturbance to the business operations and the lives of [Defendant']s employees.
>
> Accordingly, to provide for a more expeditious resolution of certain employment-related disputes that may arise between [Defendant] and its employees, the [Defendant] has instituted a mandatory mediation and arbitration procedure for all employees. Disputes that may arise from your employment with [Defendant] or the termination of your employment must (after appropriate attempts to resolve your dispute internally through . . . management channels) be submitted for resolution by non-binding mediation and, if necessary, mandatory arbitration in accordance with the Statute of Limitations Policy.

> In exchange for your agreement to submit these disputes to mediation and (if necessary) binding arbitration, [Defendant] likewise agrees to the use of mediation and arbitration as the exclusive forum for resolving employment disputes.

ECF No. 3 at PageID.52.

But neither the Manual nor the Acknowledgement, even when considered in tandem, evidence Plaintiff's assent to mandated mediation and arbitration. By its own express terms, the Manual is *not* a contract, and its policies and guidelines can be unilaterally amended by Defendant at will:

> **B. About this Manual**
> [] This Manual is not a contract. The policies in this Manual are not intended to, and do not, create any sort of contract between you and [Defendant]. Any contractual obligations between you and [Defendant] will be set forth in separate written agreement or agreements. []
>
> [Defendant] reserves the right to revise, add, or delete from this Manual as it determines to be in its best interest. . . . When changes are made to the policies and guidelines contained herein, we will communicate them in a timely fashion.

*Id.* at 3 at PageID.34. Moreover, even ignoring these unambiguous provisions, Plaintiff *never signed* the Manual or otherwise manifested her assent to its arbitration provision. *See generally id.* at PageID.33–52. Although Plaintiff signed the subsequent Acknowledgement, nothing within the Acknowledgement suggests that Plaintiff's *agreed* to the Manual or the specific arbitration provision. *See id.* at PageID.56. Instead, Plaintiff's signature only suggests that she *received* the Manual, and understood that she had the responsibility of familiarizing herself with it and any of Defendant's subsequent amendments or revisions. *See id.* at PageID.56.

The Michigan Supreme Court case *Heurtebise v. Reliable Bus. Computers*, 550 N.W.2d 243 (Mich. 1996) is directly on point. In *Heurtebise*, a plaintiff sued her former employer claiming she was unlawfully terminated. *Id.* at 245. Her employer moved to compel arbitration based on a provision within the company's handbook, arguing that the plaintiff "received" the handbook and,

in a separate document, agreed to be bound by the handbook's policies. *Id.* But, like here, the handbook (1) explicitly disclaimed that it was not a contract between the employee plaintiff and the employer defendant; and (2) noted that any policy within the handbook could be modified by the employer defendant at any time. *Id.* at 247. The Michigan Supreme Court held that these provisions "demonstrate[d] that the defendant did not intend to be bound by any provision contained in the handbook" such that the handbook's arbitration provision was unenforceable. *Id.*

Although *Heurtebise* was decided almost 30 years ago, its central holding remains dispositive today. *See, e.g.*, *Stewart v. Fairlane Cmty. Mental Health Ctr.*, 571 N.W.2d 542, 546 (Mich. Ct. App. 1997) ("We cannot conclude that an agreement . . . is mutual or binding where, as here . . . an employer may unilaterally amend at any time every policy contained in its employee manual[.]"); *Miller-Webb v. Genesee Cnty.*, No. 325593, 2016 WL 1579016, at *3 (Mich. Ct. App. Apr. 19, 2016) (concluding plaintiff was not contractually bound to arbitrate claims under employer's manual because the manual "expressly state[d] that it [wa]s not an employment contract"); *Mohamed v. Brenner Oil Co.*, No. 341899, 2019 WL 845852, at *3 (Mich. Ct. App. Feb. 21, 2019) ("As in *Heurtebise* and *Stewart*, the Handbook here demonstrates that defendant never intended for it to create a contract. The front page of the Handbook explicitly states that it[] 'does not constitute nor should it be construed as a promise of employment or as a contract between [defendant] and any of its Employees.' . . . Moreover, defendant reserved the ability to change or modify the policies contained in the Handbook, with or without notice to plaintiff or any of its employees."); *Glazier v. True N. Energy, LLC*, No. 20-CV-12540, 2021 WL 1534319, at *4 (E.D. Mich. Apr. 19, 2021) (concluding handbook and acknowledgement were not enforceable contracts because both disclaimed their contractual nature and provided that the handbook's provisions could be changed at any time); *Chambers v. Cath. Charities of Shiawassee & Genesee Ctys.,* No.

358103, 2022 WL 2286203, at *3 (Mich. Ct. App. June 23, 2022) (holding arbitration clause within employment manual was unenforceable because the provision's explicit disclaimer—that the provision was not a contract—was a "manifestation of defendant's intent not to be bound").

Here, like in *Heurebise*, the Manual expressly provides it is *not* a contract between the Parties and can be amended at any time by Defendant, ECF No. 3 at PageID.34, and the Acknowledgement reflects the same. *Id.* at PageID.56. So, like in *Heurebise*, Defendant's request to compel arbitration will be denied.

### IV.

Accordingly, it is **ORDERED** that Defendant's Motion to Dismiss or, in the Alternative, Stay Proceedings to Compel Arbitration, ECF No. 3, is **DENIED.**

**This is not final order and does not close the above-captioned case.**

Dated: August 20, 2024                                         s/Thomas L. Ludington
                                                               THOMAS L. LUDINGTON
                                                               United States District Judge